Good afternoon. Tom Cotter on behalf of Rick and Mary Lou Stengel. With the Court's permission, I'd like to reserve seven minutes for rebuttal. You got it. The District Judge erred in three distinct ways when he dismissed the Stengel's complaint. First, because the complaint is based on traditional State law theories, and because those theories are premised on facts that arise by violations under Federal law, it is not expressly preempted. Secondly, because the FDA had acted prior to the filing of the complaint and found Medtronic in violation of its FDA reporting requirements, it is not impliedly preempted. And thirdly, where the District Judge denied the plaintiff any discovery and dismissed the counts despite the fact that premarket approval information is generally confidential and thereby shielded from the plaintiff, the plaintiff was deprived or potentially deprived of the opportunity to allege additional violations of Federal law which would have supported the complaint. Can I ask you this? Does your causation theory require you to show that the FDA would have taken some action in terms of ordering a supplemental warning? Your Honor, I – it does. It frankly requires us to show what the FDA did. Well, can I stop you there? Because in the Hughes case in the Fifth Circuit, there was a footnote suggesting that the mere filing of the adverse event reports with the medical community, such that doctors, you know, would have been able to take precautions on their own, without the FDA directing the manufacturer to actually, you know, send out a supplemental warning. What's your view on that? Well, my view is that causation is uniquely factual, and one of the problems with handling these cases on a motion-to-dismiss stage without discovery is we're, in fact, not able to predict, without moving forward with the case, what the medical community would have done had they been given this information. Well, but you have to have a – you have to have a theory, and I think what Dr. Swanson is asking is what's your theory? What's your best case, assuming things break your way? What do you think about this idea in the Hughes case that if they provide information to the FDA, this would get disseminated without the FDA's help? Is that – is that – I think that that argument, in fact, would support a cause of action and, therefore, would make a dismissal inappropriate. But I think that there are probably a plethora of facts that would prove causation would be we be allowed to look into the relationship or the reportings by Medtronix to the FDA. But you don't get to maintain a claim on an idea that there's a plethora of things out there that might show up. This is not a fishing expedition. You've got to have a theory and you've got to have alleged facts. And I don't understand exactly what it is you claim they should have done that they didn't do that's required under State law. Well, two things that they didn't do is act with reasonable care, nor provide a device that was reasonably safe once they became aware that it was paralyzing people. Arizona recognizes a duty to give post-sale warnings. In this particular case, we know Medtronix failed, both in failing in 2002 and 2003 to provide an educational brief that it created to the FDA, and in failing to report at least 37 adverse events that happened over the course of time between the premarket approval and when the FDA performed an audit. And at that audit, at the Medtronix plant, it went in and it found evidence of all of these other adverse events which the FDA had not been told about. Now, I'm having trouble understanding the relationship between this causation question and what the district court held and why it held. District court dismissed or failed to allow or refused to allow you to submit the proposed complaint because it held that your complaint on failure to warn, along with everything else, was preempted. Right. Now, assuming it's not preempted, then you can get to causation. But I don't know whether it's caused or not caused. I don't see that that's tied to the preemption question. The preemption question is, is the standard to which Medtronix is to be held something that the State has permissibly incorporated into State law and thereby created a cause of action? I don't see how causation is at that question. Causation comes after that. Well, let me put it in these terms, because this is where I need help. If you're saying, as you just did, that your theory of causation requires you to show that the FDA would have taken some action in response to getting these adverse event reports, then explain why this is different from Buckman. Okay. If I might ask, Aster, your question and then Judge Fletcher's question. First, I don't believe that it requires me to only show that. I have to show causation. I have to show some connection between their failure to file or comply with Federal regulations and the cause of injury. One obvious inference that comes from the facts here is that a warning letter went out, and when it went out, immediately the FDA said to Medtronix, you better deal with this, and Medtronix turned around and sent out a supplemental warning to the physicians, but that was too late for Judge Arler, Dr. Arler Braekel, who was providing care to Mr. Stengel and who didn't know about this. And so he didn't order the appropriate test, and Mr. Stengel ended up paralyzed. Now, that's one obvious causal relationship between what occurred and what wouldn't and that what should have occurred. Had what should have occurred occurred, an earlier warning would have gone out, or the jury could infer that an early warning would have gone out. In addition, to use Judge Walker's example. Scalia. Going out from where? Pardon me? You're speaking passes. Passes are always so annoying because you don't know who's the – Well, I think – Would have gone out from where? I mean, who would have issued a warning? Well, I think the actor in this case, once the FDA – But it doesn't answer my question. I ask you a specific question, who, and you, you know – Medtronix, Your Honor. Medtronix? Yes. Were they allowed to issue warnings without the FDA's approval? Well, under 814.39, they can permissibly enter or send those warnings out if it doesn't affect safety or efficacy. But then here, what happened is they were required. As soon as their violations were discovered, they were required to do it. Had those reports gone out when they should have, they would have been required earlier. Counsel, what makes a State claim parallel to a Federal claim or not? How do we measure that? Your Honor, the best I can do on that is if there is a State cause of action that is premised on violations, for instance, you can have a negligence per se cause. And I would refer the Court to the Supreme Court's opinion in the Bates case, where the majority opinion said in the trial, you can't actually require that the Federal regulations be given as instructions so that the jury can determine if there is a State violation of a parallel obligation. And the analysis in Bates is was identical to the analysis that was used in Riegel and in Lohr, and so that should be instructive. May I just stop you there to get some clarification, because you said if the duty is parallel. The duty here is to notify the FDA of certain events, but a State law failure to warn claim is a duty in the case of certain risks to notify the consumer or in this case the physician. So the question then becomes, you're at least one step removed from that, and I'm not sure that causation is the sine qua non of whether something is preempted or not. I think then you're getting into whether you can State a claim under your cause of action. So I really wonder whether you have parallelism here, and I would appreciate further elaboration on that. Well, if I understand what the Court is saying, the State law claim is a duty to act reasonably, with reasonable care. That is carefully and exclusively pruned down by Section 360K, saying that anything that the obligation of reasonable care would require that is different or additional to what the Federal regulations require is preempted. And so what we are left with is a an exact parallel between what the obligations of reasonable care will allow and what the Federal regulations require. And the way that gets expressed in the mechanism is with jury instructions that basically say that. The difference is that the duty under the Federal regulations and statute is a duty to report certain things to the FDA. And it doesn't go beyond that. And that's the duty that you claim that they breached, correct? It was under the Federal. Both. There were a variety of duties that were found in the warning letter. They didn't create a system to find these things. They didn't report them to the Federal. It should have been a correction. It fell under a technicality, or not the technicality, but the rubric of a correction. But the question then is, that's their duty under Federal law, but that's not how does that tie into the State law claim? Because the duty under State law is of reasonable care. And as the Hughes case said, one of the things that a reasonable care can require is that they in fact follow the Federal regulations which impose upon them these obligations to report. It's actually a misnomer to say that their obligation under State law is merely to notify the doctors. It's to act with reasonable care. And whether they met that burden and what that burden requires is generally a fact question which can be informed by the Federal regulations, which can prove a basis for a standard of care. Could we back up? Excuse me, Judge Smith. Go ahead. Go ahead. Judge Collins said, though, even a parallel claim can be impliedly preempted under Buckman. What's your answer to that? Well, I guess I would point this Court to its own recent case law in Kimmel and Fotomedics, and then most recently in Tom Wonderful, where the Court says basically whether something is impliedly preempted is on a case-by-case basis, and in the Fotomedics case, what the Court said that where the FDA has not acted is on a case-by-case basis. But why is it impliedly preempted under Buckman, but not here and under our circumstances? Why is this case different? Well, because the FDA acted in this case. The FDA – my understanding and my reading of Fotomedics is the Court says basically that you can't – the State can't collide with the exclusive enforcement power of the Federal government. So unless the FDA has itself concluded that there's a violation, you can have implied preemption. But where the FDA has reached that conclusion, you don't have implied preemption, or at least that's the implication from the fact that they said where the – that this Court has said where the FDA hasn't acted, you have implied preemption. I would like to back up just a little bit. It seems to me that what you're really arguing about are your amended complaints or your ability to amend, because the original complaint – I mean, I read the original complaint, and I don't find anything in the original complaint that alleges any conduct violated FDA regulations. In fact, the original complaint is broad. It challenges safety and effectiveness of Medtronic's pump, and I'm reading, without any hint of any allegation of the FDA complaint – of FDA allegations. So are we really moving to the motion to amend here with your argument? Because the complaint itself is much broader than the FDA. It doesn't even talk about the FDA. Well, I believe that's correct, Your Honor. So, therefore, we're moving to the motion to amend then with your argument, because the motion to amend does bring in the FDA for the first time. That is correct. And so if I'm moving to the motion to amend, what is my standard of review? I was expecting the Court to get there, and I know that it allegedly is abuse of discretion. It allegedly is. I don't find any – I frankly don't find any case law that says it isn't. Where the denial – where the denial of a motion to amend is based on the notion that it's futile because the causes of action are expressly and impliedly preempted as a matter of law, the standard of review for whether implied or preempt or expressed preemption exists is de novo. Well, it's not a – I'm not sure it's de novo, but under Kuhn, a mistake of law is a type of abuse of discretion. So maybe it would fall under that, but – Well, I guess – I guess where I'm trying to go is then if, in fact, you'll go with an abuse of discretion, your substitute proposed amendment really alleges that Medtronic did not report to the FDA all of the information that it was supposed to. I don't see why this is any different than fraud by omission, which is exactly the fraud on the FDA that Buckman says is preempted. Well, Your Honor, first, I believe that our complaint – our initial complaint was drafted under State law. It was removed, and Arizona does not follow Twombly. But I understand that once a complaint is removed, Twombly applies to it, and we moved, I think, properly to amend the complaint, and it said that – And we're now under the motion to amend, and we're looking at the abuse of discretion. So answer my question. Well, but – Why is it any different than the fraud on the FDA that the Buckman case says is preempted? Because the FDA acted pre-complaint. Because the FDA had already taken action and determined that what the Medtronics had done breached its obligations under Federal law, which does constitute or can be used as evidence of negligence or as negligence per se under Arizona law. Well, but if the FDA already acted, as you suggest, including acknowledgment of the pump's warnings in the recall, doesn't your case seek to supersede the action of the FDA? I don't – I don't think so at all, Your Honor. We would have been content with the warnings that the FDA required Medtronics to adopt as part of its recall had they been done in time to preserve Mr. Stengel's neurological function. But what happened was Medtronics breached its duties under Federal law and prevented the – by not reporting, prevented the FDA from sending out the warning letter and requiring the additional warnings. What case in Arizona law runs parallel with this law? Because as I read the duty to warn under Arizona, it runs to consumers. I don't know anything in that State law that has any duty to report to the FDA regulations. Well, I read all the cases on Arizona law, and I'm trying to find the parallel State law that says there's some duty to report to the FDA. Sure. And frankly, I think that analysis is incorrect. The analysis is, is there a duty of reasonable care, which Medtronics, as a manufacturer of devices, owes? What that is required to satisfy that duty is a question of fact, generally. And you can – for that case, you can look at Markowitz v. Arizona Board of Parks and Rec., which basically says the existence of the duty is a question of law, whether the duty's been breached is a question of fact. It's an Arizona Supreme Court case. But the point is that Arizona law requires reasonable care. If what's reasonable in order to prevent patients from being paralyzed is that Medtronics lives up to the Federal regulatory scheme that it's involved in and gives notice to the FDA of these adverse events, then Arizona adopts that requirement as part of the duty of reasonable care. And where the FDA then acts to require additional warnings, that is a causal element and a part of our case in chief. There's no impairment at the Arizona level in asserting this cause of action. We're talking generically about duties of care, but I think one has to, if you're looking at parallel proceedings, you have to be more specific. And I think the question that many of us have been asking today is, why is a duty to warn consumers a parallel cause of action to a duty to notify or report to the FDA? And you've retreated to the generic, can you give me a specific answer? Why is that parallel? It is parallel because the obligations are to act with reasonable care. But here, they are set by the Federal regulations. The Federal regulations... Yes. But the duty of care to the Federal regulations is reporting to the FDA, not to the consumer. True. And then acting as the FDA instructs. In this case, requiring additional warnings. Which takes you back, I think, to the original question is, what is the causal or logical link between failing to report to the FDA and the damage that occurred? What is the actual causal link? Well, I mean, I think that logically that's where you would have to end up. Well, and I had, perhaps I'm just not being clear. I thought I had spoken clearly on that. What happened in Mr. Stengel's case was the warnings had not gone out. Therefore, when he, his granuloma occurred and he went to the ER basically paralyzed, his doctor did not know that this Medtronic's device could cause granulomas, so he didn't do the appropriate test. Had Medtronic's performed its obligations under the Federal regulations and reported this educational brief and these 37 adverse events, we can infer just that Medtronic's or that the FDA would act just as it did act as soon as it learned these things and require the same warnings to go out to the physicians, in this case Dr. Brayhill, so he would have known. And we have a paralysis in 2005 and briefs in 2003. What do you make of the Supreme Court statement in PL, Priever, Ng v. Mincing, where it describes Buckman as holding that Federal drug and medical device laws preempted the state tort law claim based on failure to properly communicate with the FDA? This is at 131 Supreme Court Reporter 2578. And I'm not... Isn't that exactly your theory? Your theory is that there was a failure to properly communicate with the FDA? Your Honor, I think it probably is, but I don't think the facts of that case support or answer the question whether you can assert that implied preemption or it can be used where the FDA has acted. In this case, where the FDA has acted, this Court has held, in the Fotomedics case or at least implied by holding the word they haven't acted. What difference does it make whether the FDA acts or doesn't act if the theory is you didn't communicate properly with the FDA and that claim is preempted, then why does it matter, how does it become unpreempted if the FDA has acted? I guess I would quote another Supreme Court, in the Bates case, where the majority opinion said that thou does nothing to answer the question why, if you have a statute that says the States are prohibited from having anything that's different or additional to, why that isn't clearly designed to draw a distinction between those claims that are preempted and those claims that are not preempted. And in that case, what the Court held or seemed to be holding was that claims like this one can go forward. The – I understand the PLEVA language says all communications with the FDA, but that's not really the thrust of the case or the facts of the case. And I think the Bates case in 2005, which is 4 years after the Buckman case, suggests that Buckman did not mean that. You would agree, I guess, that where you are suggesting that the Medtronic do something that is not required by the FDA, that would be preempted. Because there are – I mean, you say that you rely on the theory that Medtronic should have sent a medical device correction notice to the physicians, but that was just something that could have been sent or was not necessarily sent. No, Your Honor. The criticism is that Medtronic created a brief that it didn't send to the FDA. Did it have a duty? And the FDA said it had – it committed – it violated its regulations when it did that. It's not the failure to send a brief to the physicians, which is a violation of the Federal regulation. It's failing to send it to the FDA and then frustrating the FDA in its opportunity So then you're agreeing with me, if the FDA requires it, that's the only place you really can come in. If it's just something the FDA says you can do but it's not required, then it's preempted. Would you agree? Well, I agree that there's some authority to that, to that end, Your Honor. I think that when you have a violation of Federal regulations which deprives the FDA of the opportunity to act, we're on dicey ground when we say if the FDA only or maybe only could – would have allowed it but not required it. The FDA was deprived of its opportunity by not having to regulate and to have additional requirements. Well, but again, that brings us back. When you go there, that brings us back to Buckman. Except he's no different than fraud on the FDA, which is preempted. Except here, the FDA acted, we know how they acted, pre-lawsuit. And so in that respect, it's critically different than Buckman. What the Court seems to be suggesting is that there's these two sets. If it's based on a Federal regulation, you know, then it's impliedly preempted. If it's not based on a Federal regulation, then it's expressly preempted. So everything is preempted. No, but I think the distinction might be a finer one than that, so maybe you can help me out. I'm having some trouble getting over this hurdle that it depends on whether the FDA acted or not, because when you're looking at whether something is preempted and whether it's parallel, you're really looking at what is the duty under the Federal statute or the Federal law, and here it's the duty to report. You then say, well, if there's a duty to report, then the FDA might have, they could have taken it off the market, they could have ordered a different label, they could have ordered a warning to physicians. There's multiple things the FDA can do in response to adverse information. And all of that, you know, sometimes they do it, sometimes they don't. It just seems to me that if you're trying to figure out what's the parallel cause of action, that it ought not depend on whether the FDA acted or not. But maybe you can disabuse me of that notion. Dreeben, Jr. Well, Your Honor, in just in 2012, in the Palm Wonderful case, this Court said that it's a fact, case-by-case analysis, whether preemption exists. It strikes me as the most critical, the most critical fact in that analysis is once the regulations, the FDA discovered the violation of regulations, how it did act must be the most important factor to guide this Court, because otherwise, you're creating a situation where the consequences of violation of those Federal regulations is nevertheless that claims by injured patients are preempted. Well, perhaps so. No, but, I mean, you would have a claim, a failure to warn, where the FDA says you have to have these kind of warnings, you know, in your pharmaceutical packet or on your medical device, and then you could have a parallel failure to warn for failure to do that. You violated the Federal regulation. It's perfectly parallel, and you wouldn't, it wouldn't, you wouldn't even have needed the FDA to sanction you for anything. You would just say, look, they violated that regulation and I have a parallel State. So you wouldn't be wiping out everything. Well, but in the FDA, when you could infer, when the FDA grants premarket approval and specifies warnings, part of that specification assumes that the manufacturer will act in compliance with the regulations and it will have the opportunity to take corrective actions if there's something bad going on that it didn't know about. And if you're going to deprive the FDA of that, you're at least as interfering as completely in the FDA process as if you're going to say that a State law claim can be premised on violations of the regulations that the FDA itself found. Scalia. Two minutes left. Yes, Your Honor. Counsel, just one quick factual question. That January 2008 letter that you attached to the amended complaint, did that come as a – that was from Medtronic to the medical community, right? Yes. Did that come as a result of some FDA order? Is that what you're saying? Well, if you read the – I'm just asking as a factual matter. Did it or no? Well, the FDA instructed in the last paragraph that they take immediate steps. Is that an order? That, you know, they – and they took those steps, and then they were able to act. Well, you keep saying that the FDA – here, this is different from Buckman, because here the FDA did act. It did order Medtronic to issue the supplemental warning. And I'm just asking you, is that really true? Because I don't see anything in the record that supports that. Well, it issued a – an urgent warning letter to Medtronic which directly resulted in its 2008 urgent medical device correction. And so did it order it? It said you need to deal with this right away. You're talking about the other letter that you attached, the thing that said, we've been to your facility and we've done this audit and we found these deficiencies? That is what I'm talking about. Your Honor, I have less than a minute. Okay. We'll hear from the other side. Thank you, Your Honor. Good afternoon, Your Honors. My name is Michael Brown, and along with Lisa Baird, we represent Medtronic, the defendant and the appellee. The district court's decision should be affirmed for the following reasons. First, each of the four causes of action in both the original and two proposed amended complaints are expressly preempted under 21 U.S.C. Section 360K because each of those causes of action would result in requirements that are different from or in addition to the Federally mandated requirements concerning the warning design and manufacture. Now, Plaintiff's counsel has suggested that there should have been a warning earlier than was anticipated. So at the end of the day, what they're asking is that there be a warning that is different from or in addition to the Federally mandated warning. That is a classically preempted claim. I don't think so. Excuse me. I didn't hear that. I thought you were saying they should have done, your client should have done what it was you're not, if you're going to talk while I'm talking, you're not going to listen, you're not going to hear what I have to say. So which do you want it to be? Do you want to talk? I want to listen to your question, Your Honor. What I understood them to say, counsel to say, it wasn't said as clearly as it might have been, but what I understood them to say is their claim is that your client should have notified the FDA sooner of these problems, that they had a duty to do so, and had they done that, word would have gotten out, either by osmosis or by, you know, the FDA then taking steps to advise them to go ahead and warn. That's their claim. Not that you have to do anything more than the FDA required, but they had to do it sooner. So why is that preempted? Because for the same reason it was preempted in the Seventh Circuit's decision in McMullin v. Medina. Yes, but in the Seventh Circuit, what's the reason? The reason is that it would require a warning different from the one that the FDA mandated. I don't see that. And that's not what I understood. What he said is, look, you've got a report to the FDA, had you done what you were required to do under Federal law, not a single thing more, had you done it sooner, the FDA would then have instructed you to send out a warning, which would have complied with Federal law, or possibly, and this is more Judge Watt than plaintiff's part in there, if you just informed the FDA, word would have gotten out. People would have seen it and doctors would have been warned. So why is that preempted? It's preempted, Your Honor, because the warning – Medtronic couldn't change the warning without the FDA's permission. As it relates to the argument that was made that if we had complied, as plaintiffs suggested, the FDA would have done something different, I'm not aware of any case that has said that if you have to rely on speculating that the FDA would have done something different. But that's fine. That's another argument. That's a causation argument, and we can talk about that. But I thought he was saying their claim requires – would have required Medtronic to do something other than in addition to what Federal law required. And I didn't understand him to say that. So focus on that aspect of the issue. How, accepting this as their argument, what is it? What is the specific thing that you claim Medtronic should have been required to do under their theory that – other than what Federal law requires them to do? Your Honor, under their theory, they were suggesting that we should have sent the educational brief and or any other warnings sooner. There are some factual problems with respect to that as well, and that is specifically what the FDA in the warning letter, which is attached to volume 2 of the excerpts tab 7, what the FDA was concerned about was that we did send the educational brief, which talks about the very specific injury that the plaintiffs had in 2003 to all of our customers, meaning doctors. And so if, in fact, their theory is that we violated some post-sale duty to warn, it's counterfactual because, in fact, we did send the information to doctors. What the FDA was critical of was saying you sent it to the doctors, but you didn't send it to us, meaning the agency. So it's – It's a counterfactual argument that wouldn't necessarily go to preemption. That could go to the fact that if it weren't preempted, there would be no violation because you did send it out. I mean, there is this irony in their claim. But their claim is, as I understand it, you are required to report to the FDA, and the nature of what you put in that other letter rises to the level of a correction. And in that case, the FDA said, get on it. Now we have this information. Get on it and do something about it. Had you notified the FDA in due course, then they would have required something earlier, officially. Right. And I think we may have done it unofficially, which was potentially a violation because it was a relabeling without authority. As it turns out, Your Honor, in the – Potentially. The warning letter that was attached, pages 716 and 717, deal with the issue. And these portions of the letter were not attached or reprinted as part of the original panel's dissent. But what happened was Medtronic provided its response in that it was described what was done. And when it said the reason it didn't send it to the agency was because it viewed it as an update to a letter sent to doctors in 2001 about inflammatory masks, that the FDA had approved, had seen and approved that letter, and that the language that they said, please put this in the urgent device correction, Medtronic said, but we submitted a premarket approval supplement, number 53, that had essentially the same language in it. Well, isn't that really a response on the merits of whether they have a claim as distinct from whether, in theory, they can state a claim? Because if their complaint is all we want you to do is follow Federal law, the answer well, we did follow Federal law seems to be an answer on the merits, and that's what I'm hearing you argue now. Well, Your Honor, I don't think there's any doubt that Mr. Stengel received a device that was the one that the FDA had mandated, meaning that it met the manufacturing specifications, design specifications, and the warning that existed upon approval he received. So prima facie, under Regal, that claim would be preempted unless the plaintiff can articulate that there is a parallel claim. And so how plaintiffs have attempted to articulate the parallel claim is that there was a failure to report. But, and granted, the cases on parallel claims have not been completely uniform, but we have learned some things post-Regal as to what is required for a parallel claim. Number one, there needs to be a specific Federal requirement that was deviated. Let's just, for argument's sake, say the failure to report to the agency meets that. Second, there needs to be an established State law claim that is genuinely equivalent or identical, and that's the language from Lohr, from Bates, from the Eleventh Circuit, from all the circuits. But how does a State claim become essentially equivalent? It's really, there are at least two ways, it seems to me, and we're talking about the second one. One is that a State says, by statute or decision, follow the Federal law, and these particulars, we agree with the Federal government, do what they say, so that it's explicitly parallel. The other is to say Federal law, and only Federal law, supplies the duty. But that is more generic. Is that kind of parallel allowed? The classic parallel claim, Your Honor, was articulated by Justice Breyer in the Lohr case, and that is, if the device required a 2-inch wire and you sold one with a 1-inch wire, that would be a nonpreempted claim. And the same would be true if they got a warning or a design that was different. And the reason it would be true is, number one, you wouldn't have met Riegel's two-prong test. In other words, there you wouldn't have satisfied the Federal requirement. So manufacturing defect, design defect, is a traditional State law claim that's already been established. That would be a parallel claim. And that's why it has to be device-specific violations if it's even going to be parallel. But then you would have to be parallel. But why, in terms of negligence per se theory, wouldn't that cause of action be parallel? In theory, I understand the differences, distinctions you're drawing in this case. But if all you're saying is it's a violation of Federal law and, therefore, it's an indication or either negligence per se or evidence of negligence, period, then it's plausible. Well, in this particular action, Your Honor, the negligence per se claim has been waived because it wasn't raised until the supplemental brief. But still it's a claim. Well, assuming it hasn't been waived. But then, looking at it. The question before us is whether or not the one of the questions is whether or not the district court abused its discretion in denying the motion to amend. And part of the negligence per se issue comes as folded in there. So assuming it's on the table, tell me why it's not preempted. I believe it is preempted. And the reason for that is that you need to look to see whether or not Arizona State law would provide a basis for negligence per se based on a statute that where there hasn't been silence about whether or not you can base negligence per se. And I believe that in Placencia v. Iflow, a district court case from Arizona, they looked at the issue where the plaintiff there attempted to say there should be negligence per se because it was a violation of off-label promotion. Right. But that's a district court case that's trying to interpret State law. And they've got some pretty sound case law indicating that one, in theory, can use a Federal statute as a basis for negligence per se in Arizona. The only thing I've seen was that if the Federal statute is silent on it, which obviously the plaintiff can't. I'm looking at the Martin case. The Martin case, again, that involved the handgun regulation. The statute had been silent as to whether or not it could be the basis of negligence per se. Here we have 21 U.S.C. section 337a, which is not silent, which absolutely says you cannot base an attempt to enforce Federal regulations. And there is no Arizona case where a breach or a violation of the Food Drug Cosmetic Act has formed the basis of negligence per se. Well, that's true. But, I mean, the statute itself says what we're preempting is something that's different from or in addition to any requirement. If you're saying all we're basing it on is the FDA requirements and a violation of the statute as forming a negligence per se theory, why is that preempted? Well, for the same reasons that the Kemp decision found it negligence per se preempted, that there's not a basis for a cause of an underlying cause of action, and Arizona hasn't had one. Now, this issue was raised recently as well in the Sixth Circuit in a case called Howard. And there they found no preemption based on an assumption that under Oklahoma law there would be a negligence per se cause of action. It went back down to the district court in the Northern District of Oklahoma, who, after examining Oklahoma law, found that Oklahoma law did not support a negligence per se claim based on a violation of the Food Drug Cosmetic Act. That was appealed to the Tenth Circuit, who found it more ambiguous. It's currently certified to the Oklahoma Supreme Court. But I think the analysis has to be similar to what went on there, and that is to look at Arizona law to see whether or not under that statute, not under a gun statute or whatever, under the Food Drug Cosmetic Act, would it support a negligence per se claim. You provided a nice segue to my final question, which is why not, if it's ambiguous, why not certify it to the Arizona Supreme Court and see if they recognize a cause of action? Well, I think that what was ambiguous was under Oklahoma law. I don't think that it's ambiguous given under Arizona law. The only cases we have would be the American or analogous would be under the FIFRA regulations, the American cyanamide case, and the Plasencia case, which I talked about earlier before. So with respect to that and the other requirements of parallelism, and that's where we get off track, in addition to identifying the specific requirement, there has to be the established State law duty, but there has to be either identical or no. It depends on how, at what level of generality, you establish a State law duty. If the State law duty is just a general duty of care, which includes providing such warnings as you can reasonably provide, then that's, which I think is what State law is. Then why isn't one manifestation of that is you can't send something out on your own to doctors and consumers, but you can do it by informing the agency. So the State law duty is to do the best you can, and the best you can in these circumstances would be you let the agency know, and they'll tell you. They'll tell you whether you should send out further warnings, whether you need to modify the device. So at that level of generality, the duty seems unremarkable, not all that difficult to, you know, fairly well establish it. Well, Your Honor, I think a duty to warn, and it would be physicians in this case because it's a prescription product, is significantly different than a duty to report to the agency. I think you then get into what is required. Law requires identical duties. But it is not a duty to warn to agencies. Where is it to warn doctors? The point of the duty is to warn consumers, is to let consumers know the people who are actually going to be harmed by the device's malfunctions. How you do it, whether you go to the doctors, you go to the agency, or you go somewhere you know, you sky write it or whether you send it by Internet message or all that, you know, a chat mail, you know, it doesn't matter. If the duty is to communicate the best way you know how, why isn't why can't you establish a claim in the State law by saying you should have, could have, ought to have let the agency know, and at that point you did everything you could? Well, Your Honor, I think that the problem we have there is that that is not meeting the rigor that I think the general equivalence cases that have discussed what a parallel claim is or is required, requires general equivalence. The Supreme Court in Lohr talked about the duties being identical. And here, if you were to allow any general duty of care to essentially take the case at a preemption, then you'd have Regal being essentially an obstacle, a pleading obstacle, and one, frankly, that could be overcome. Excuse me. I'm not sure that you and I are reading the Supreme Court cases in the same way. I'm just reading an excerpt from Regal which characterizes what the Court held in Lohr, and parallel, as I read the Supreme Court, doesn't mean identical. Parallel means that the State law duty is premised upon the Federal duty. I'll just read to you. This is now the Court in Regal at 330, quote, Thus, Section 360K does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations. Premised on. The State law duty is in such a case, in quotation marks, parallel, rather than add to. So I don't see that it needs to be identical in State law. All it needs to be is, I'm just reading Regal, is that the State law violation is premised on the Federal law violation, and if we have a violation of Federal law, that is to say a failure to report to the FDA when your client was supposed to report, the State is not prevented from saying, well, that's a violation of the duty of care as we have it under State law. What's wrong with that syllogism? Well, Your Honor, I believe, and I don't doubt the passage there, but on pages 495, 496, and 497, the lower court talks about it being either identical or substantially identical. The Bates case from the Supreme Court made a requirement of parallelism based on genuine equivalence, and that's what's been translated post-Regal to the State law. Now, that meaning identical, meaning no more and no less, that is to say, as I read it, what the Supreme Court has done, not just in Regal, but in Lohr, is to say that the State cannot add to requirements. It can premise a State law violation upon a Federal law violation, but it doesn't have to be identical to Federal law. It just says that it cannot add to the Federal law. Right. And the reason that it worked in Lohr, Your Honor, is that what the Supreme Court did was determine that the Federal requirements at issue there were not sufficiently specific, that they were preemptive. And so as a result, a State law manufacturing or design defect claim could certainly proceed because there wasn't a counterpart Federal requirement. Regal answered that question 12 years later and said, yes, the manufactured design and warning are mandatory Federal requirements. Where it could become parallel or get out of preemption would be if you didn't meet one of those requirements. So you notice that most of them were manufacturing defect cases that exist in the parallel world, and that is because there is some objective evidence of a failure to follow the manufacturing claim. And because manufacturing defect is a traditional State law tort claim that existed, you have a parallel claim. Huge. Sotomayor, did the FDA order or tell Medtronic that it needed to issue something to the physicians? I believe that it came about as a result of interaction with the FDA, yes. But I think it was voluntary. And I think it's important because there's been a lot of talk about the warning letters or urgent device correction. And I think it's clear that warning letters are not final agency action. This circuit and, frankly, every other, including the FDA, feel that, too. In fact, it's one of the most important tools the agency has about voluntary compliance. And so here, once the FDA sent the warning letter about the educational brief, the one that did advise doctors of this, two years before Mr. Stengel had symptoms, by the way. And so it then said, look, this information, I want you to put this out, let doctors know, and so Medtronic did it. It turns out that it already was in the label from 2009. But I think, going back to the claim, I think in a way what they're saying is that the Federal law is a precursor to the process of warning. So it's not inconsistent. In other words, they can't go out and you can't, your client can't go out and issue new warnings or new labels or amendments. But as a precursor duty, you have to report to the FDA, and then that kicks off the warning, if you want to call it a warning process. So the question then becomes if the State law duty, as they articulated it, is reasonableness and there is a duty for post-manufacturing warnings. Well, that's what's happening here. Isn't that the reason you report to the FDA to determine if there should be a post-manufacturing, post-approval warning or advice? That's part of the process, Your Honor, but the information that goes in these reports to FDA, the FDA acknowledges is not evidence of causation or anything. They may take a look at it, keep an eye on it for several, maybe several years, it may be a day, depending on what it is, but it's not, it doesn't follow that if you get some reports, you then automatically change your label. You're right that the company could not issue a new warning at a different time or elsewhere, without the FDA's approval, except 21, Code of Federal Regulations 814.39 says that you can do it as an interim and that that's permissive. And that's what the Seventh Circuit in McMullin dealt with that issue, and it's very similar factually to our case, because what the plaintiff there was saying was you became aware of this incident and then you put out a notice, similar to the device correction notice. Had you done that earlier, had it been in your label earlier, this never would have happened to the individual plaintiff. And what the court there said was that 814.39 is permissive, and if you were going to have a State requirement that made it mandatory, that you had to have done it, you would have created a requirement on warnings that was different from the rendition 2. That situation is different, because there, that reg you're talking about is the actual warning that would go directly to the doctors. The plaintiff here is just saying my State law claim is predicated solely on your failure, your client's failure to make the adverse event reports to the FDA. I just don't even understand how you can contest that that is an identical claim. It's predicated entirely on the very Federal law. So how is there any daylight between those two? But the failure to report to the agency is not something that this plaintiff or, frankly, any other plaintiff could sue for standing alone, because it would run afoul of 21 U.S.C. 337 and above. They're not trying to enforce the FDA's regulations. They're trying to enforce their State law, the State, the claim that State law provides them. It just so happens here, at least according to their theory, that State law exactly parallels what Federal law requires in terms of what their claiming is actionable. Your Honor, I don't see where there is a parallel claim on the Arizona State law, because there doesn't exist anything that has remotely to do with reporting to an agency. What it has, like most States, is a general duty to warn of known and knowable risks. Kennedy. But just a minute, but just a minute. As I understand Arizona law, they have a, they allow for warning of third parties of a risk where there's reasonable assurance that this type of warning will reach the end user. In other words, under the common law, Arizona allows for that warning of the third parties. If we're just trying to get all this information out to the doctors and or the patients and or the doctors doing something for the patients, and we have a general warning law in Arizona that allows them to warn third parties that will get the reasonable assurance that the warning will reach the end user, how does that differ from what we have here? Well, Your Honor, the obligation of a manufacturer like Medtronic in Arizona and many other States is to warn physicians, and it's called the learned intermediary doctrine, and the reason is we wouldn't know who the patient would be that got that. So we satisfy our State law duty by warning physicians. And as far as the warning of the third parties is concerned, it's a general law. As long as the method of providing the warning provides reasonable assurance the warning will reach the end user, that's the general law. Your Honor, that law doesn't apply to prescription products, drug and device products. Rather, that is the Piper versus Bear system, Your Honor. In Arizona? Yes, in Arizona. And that's where Arizona adopted the learned intermediary doctrine. Let me see if I can get a cite for you. Piper versus Bear Medical Systems, 180 Arizona, 170, from 1994. And as in Arizona and California and many other States, the learned intermediary doctrine dictates law duty as it respects to how warnings are communicated and what a manufacturer's responsibility are. So we know that our obligation is to warn a manufacturer. So now the question is, what can we do, who dictates what the warning is? And here it's unequivocally the FDA. And so where in Piper are you reading? I'm sorry, Your Honor. I just wanted to know where in Piper you were. Your Honor, I don't have the pin cited. I'm sorry about that. But it stands for the general proposition of learned intermediary doctrine. And just that. It sounds as though maybe we should certify to the Arizona Supreme Court just to ask them what State law is. Well, maybe just ask Judge Fletcher. I don't think there's any disagreement that the learned intermediary doctrine applies in Arizona to prescription drug and device products. The Martin case or the Riedenauer case, actually, the Riedenauer case is a law. I'll say it this way. It sounds to me as though there may very well be some disagreement in Arizona law as to whether or not there's a cause of action under Arizona law for failure to comply with Federal duty to report to the FDA when it's reasonably foreseeable that if that Federal duty were complied with, a warning would have reached doctors such as the Dr. Distingles. Well, Your Honor, the — I don't know that — there's no case been put forth by the plaintiffs that supports that. The only cases we're aware of are in analogous situations, one involving the Food Drug Cosmetic Act, and that's the Plasencia case. There is one under a different regulation, regular source. But this may bring us back to Judge Kaczynski's point. It depends on the level of generality at which you formulate a duty of care under State law. And — but under — after Regal, the premarket approval process and the FDA dictates what will be in the warning. So what we've been talking about most recently is who does that have to go to. And again, I don't think there's any dispute under Arizona law that it goes — we have to warn physicians. So cases that have a duty to warn generally consumers and elsewhere, the learned intermediary doctrine takes care of that by saying, well, when you don't know who the consumer is going to be, you warn the doctor. That part's not it. The question is what is the content of the warning, and that's something that's been discussed extensively by the FDA. And now what Planofero said, but you violated a Federal regulation about reporting. That can be the basis of my parallel claim. And I think there is where you run into the Buckman issue. And while counsel suggested that Photomedics and Palm Wonderful are supportive of his claim, I think they're not in the sense that — Kagan in Buckman, the fraud on the FDA took place at an earlier stage in which State law could have no role. The alleged fraud on the FDA was at the approval stage. And State law has nothing to say about whether a device should be approved. That's absolutely right. So here we're in an area where State law can have something to say, which is to say the device is approved, it's in use, and should there be warnings promulgated in accordance with Federal law. I don't see that the Buckman case controls this. Once we're outside of the Buckman context, which is to say, will the device be approved in the first place, which is an area of which the States have no conceivable control. But since Buckman, this Circuit and others, including most recently the Supreme Court in Pliva v. Mensing, talked about that an implied preemption claim that has to do with your interactions with or communications with the FDA is implicated by Buckman and the no private right of action rule. Some courts have taken a very narrow view of Buckman by saying unless the cause of action said fraud on the FDA, Buckman wouldn't apply. This Circuit and Fotomedics and POM Wonderful and Kimmel v. Dallal-Lamco have taken a broader view of that. And now the Supreme Court last term talked about, no, it doesn't have to be just a self-standing fraud on the FDA claim, but it has to do with if the claim is based on interactions or communications with the FDA, Buckman and the implied preemption principles. The majority opinion for the panel said that portions of the claims in the proposed amendment complaint could be interpreted to survive express preemption. Do you disagree with that observation? Verrilli, Your Honor, I think that this case could be decided on express preemption grounds alone for the following reason. I don't think the four or five elements required for a parallel claim have been met here. But no doubt about it, Judge Commins said, well, well, or the panel said, even if you could read it to escape express preemption and that the parallelism had been met and the requirements had been met, then it runs afoul of Buckman and implied preemption and no private right of action rule. Frankly, in looking at the cases that have dealt with that, that is a step that some courts have taken, where rather than wrestle completely and go through every step of the parallel claim, they say, well, even if you're right that this escapes preemption, express preemption, you still have a problem with implied preemption. And that's what happened after Regal and the cases that have been decided in the last four years, trying to add some clarity about what a parallel claim is, the Eighth Circuit and the District Court of Minnesota have said you have to read Regal and Buckman together. So Regal was not an implied preemption case, for sure. And so because it was argued, well, it didn't need to find implied preemption because they found it expressly preempted. So but courts since then have said, okay, perhaps you have been able to articulate something, a parallel claim. But that isn't the end of the analysis. You then have to see whether it runs afoul of Buckman implied preemption. And I think here the issue is that their claim is based entirely on attempting to enforce a Federal requirement. The duty to report exists solely because of the medical device amendments to the Food Drug Cosmetic Act. It has no place in State court law anywhere. And I see that my time is up, unless the Court would like me to answer other questions. Thank you. Roberts. I recall you had about 2 minutes left, maybe just 1 minute, but let's make it 2. Your Honor, I was just going to say that because I had such a short amount of time left, if the Court has no questions, I will waive your call. That's even better. Thank you. The case is argued as 10-2 minutes. We're adjourned.
judges: Kozinski, Thomas, Silverman, Graber, McKeown, Fletcher, Gould, Rawlinson, Clifton, Smith, Watford